T.C. Memo. 2006-98

UNITED STATES TAX COURT

DANIEL D. MCBOL ARUAI, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 14144-04.                    Filed May 11, 2006.

    P filed a Federal income tax return for 2003,
claiming dependency exemptions, a child tax credit, an
additional child tax credit, and an earned income
credit.  R disallowed additional dependency exemptions,
child tax credits, and an earned income credit and
subsequently determined a deficiency.

    <u>Held</u>:  P is liable for the deficiency determined
by R.

Daniel D. McBol Aruai, pro se.

<u>Frederick J. Lockhart, Jr.</u>, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

WHERRY, Judge:  Respondent determined a Federal income tax deficiency for petitioner's 2003 taxable year in the amount of $5,185.  The issues for decision are:

(1) Whether petitioner is entitled to dependency exemption deductions for KGT and/or JTW;[1]

(2) whether petitioner is entitled to an earned income credit; and

(3) whether petitioner is entitled to a child tax credit and an additional child tax credit.[2]

FINDINGS OF FACT

Some of the facts have been stipulated and are so found. The stipulations of the parties, with accompanying exhibits, are incorporated herein by this reference.  At the time this petition was filed, petitioner resided in Denver, Colorado.

Petitioner filed his Federal tax return for 2003 on February 23, 2004.  On his return, petitioner claimed dependency exemptions for KGT and JTW, an earned income credit in the amount of $3,584, a child tax credit in the amount of $279, and an additional child tax credit in the amount of $620.  Respondent

---

[1] The Court uses only the initials of the minor children.

[2] The additional child tax "credit is for certain individuals who receive less than the full amount of the child tax credit".  See IRS Pub. 972, Child Tax Credit (2003).

issued petitioner a notice of deficiency on May 17, 2004.
Petitioner timely filed a petition on August 9, 2004.

Petitioner was born in southern Sudan.  At trial, petitioner
explained marriage, divorce, and family relationships in southern
Sudan.  When a spouse desires to leave the marriage, there is no
formal divorce proceeding.  Instead, a divorce occurs simply when
the spouse leaves the marriage, which allows either spouse to
remarry.  According to petitioner, people from the same clan or
tribe consider themselves related, independent of any blood
relationship.  Petitioner and Thuok C. Wuol a.k.a. Peter Wuol
(Peter Wuol), the father of KGT and JTW, were members of the same
clan or tribe in southern Sudan.

Petitioner's mother[3] was the second wife of his father,
Bol.  Bol was previously married to Mydak.  During this marriage,
Mydak gave birth to a son named Deng Bol.[4]  Bol and Mydak later
separated, and Mydak married Gatkuoth.  During this marriage,
Mydak gave birth to their son, Peter Wuol.[5]  Thus, petitioner and
Peter Wuol are related by marriage to a common half brother, Deng
Bol.  Neither petitioner nor Peter Wuol have any parents in

---

[3] The record does not indicate the name of petitioner's
mother.

[4] Deng Bol, who was born before the birth of either
petitioner or Peter Wuol, is now deceased.

[5] Mydak died sometime after Peter Wuol was born.  After
Mydak's death, Bol married petitioner's mother.

common, nor has petitioner provided any evidence they are related by blood.  KGT and JTW are two of five children of Peter Wuol and his wife, Jakow R. Wuol a.k.a. Jekow Wuol (Jekow Wuol).

Petitioner emigrated to the United States in 2000.  In 1994, Peter Wuol, Jekow Wuol, and KGT had emigrated to the United States, where the four other children of Peter and Jekow Wuol were born.  Petitioner and Peter Wuol's family[6] reunited in Colorado Springs, Colorado.

Peter Wuol, his wife Jekow Wuol, and their four children lived at 3921 E. San Miguel, Apt. 7, Colorado Springs, Colorado, during 2003.  Petitioner maintained an apartment at 6 North 18th Street, Colorado Springs, Colorado, as his primary residence from approximately June 2002 until January 10, 2004, when he moved to Denver, Colorado.  However, petitioner spent most of his free time at the Wuol family apartment.  While at the Wuol family apartment, petitioner did not occupy a specific room; rather, petitioner would spend his time in the common living areas or occasionally spend the night in one of the children's unoccupied beds.

Petitioner testified that "because of where we come from, we don't use money.  It is very hard for us to know how to use

---

[6] For taxable year 2003, the Wuol family consisted of Peter Wuol, Jekow Wuol, and their four children.  MW, the youngest child, is not included because he was not born until June 10, 2004.

money.  We don't keep receipts of every little things [sic] we buy, for buying food or buying clothes, or anything, or even, you know, we just give money, we forget about it."  Petitioner began providing financial support for Peter Wuol's children when he obtained a job at the Broadmoor Hotel in Colorado Springs, Colorado, which paid him approximately $16,000 per year. Petitioner testified that he gave Peter Wuol approximately $1,338[7] to help Peter Wuol raise his children.  This amount represented a partial refund from petitioner's 2003 Federal tax return.  At trial, petitioner acknowledged that the refund check was received in January 2004 and that he gave the check directly to the Wuol family.

Petitioner contends that during 2003 he thought he gave more than $2,000 in "food and other things" and that he provided approximately $1,000 in cash to Peter Wuol's family for buying food, paying for the phone bill, or for "anything".  Peter Wuol confirmed that petitioner bought gifts for the children in the form of shoes and clothes, as well as taking them to restaurants for meals.  Other than his and Peter Wuol's testimony and the receipts, discussed below, petitioner did not present any

---

[7] Petitioner's 2003 Federal tax return showed a refund due of $5,105.  The earned income credit in the amount of $3,584 was withheld pending an inquiry on petitioner's return.  Petitioner was refunded $1,521, representing the sum of $901 for withholding credits and $620 for the additional child tax credit.  Of that amount, H&R Block, petitioner's tax preparer, was paid a fee in the approximate amount of $200.

evidence detailing his cash contributions, purchases, and expenditures. Petitioner explained that he did not keep records of his monetary contributions to KGT or JTW because in his home country no one claims dependents on tax returns and no one receives a refund of tax.

Petitioner offered into evidence only three receipts for 2003 to prove payments for KGT and JTW. None of them showed exactly which amounts represented expenditures for either KGT or JTW. Petitioner produced a Wells Fargo Bank transaction record dated October 23, 2003, in the amount of $450; a self-prepared receipt dated May 13, 2003, numbered 380499 in the amount of $175; and a self-prepared, incomplete receipt dated August 23, 2003, numbered 380458 in the amount of $454 to substantiate his cash payments.[8] Petitioner generally did not use the receipts in his receipt book in sequential order: "It's a matter of opening it up and writing. Then tear it out."

Petitioner did not use the receipt book solely to acknowledge his contributions or payment of money; he also used it to acknowledge receipt of money. Petitioner explained that he recorded amounts contributed in his receipt book and dated the receipts the date on which he contends he gave money to Peter

---

[8] The numbered receipts listed "Daniel Deng" on the "Received From" line. Respondent stipulated that petitioner also goes by the name "Daniel Deng", "Daniel Deng McBol", or "Daniel Deng Aruai".

Wuol. However, petitioner commented that because he gave Peter Wuol the money in 2003, he could not remember if the money was expended for rent or to help Peter Wuol with his children. At trial, Peter Wuol also confirmed that petitioner gave him money to help the Wuol family with the monthly rent.

Petitioner did not file tax returns for either 2000 or 2002. Petitioner filed his 2001 tax return, claiming no dependency exemption deductions, earned income credit, or child tax credit. Jekow Wuol, filing under head of household status, listed her sons, KGT and JTW, as dependents when she filed her 2000, 2001, and 2002 tax returns, and she claimed an earned income credit for KGT and JTW for those taxable years. However, Jekow Wuol did not file a tax return for 2003. Peter Wuol, filing under head of household status, listed children other than KGT and JTW as his dependents when he filed his 2000, 2001, 2002, and 2003 tax returns.

OPINION

I. Contentions of the Parties

Petitioner contends that he is entitled to dependency exemption deductions, a child tax credit, an additional child tax credit, and an earned income credit because he provided some support for KGT and JTW. He maintains that KGT and JTW are related to him as nephews because they are the children of the half brother of his now-deceased half brother. Petitioner

further asserts that he is related to KGT and JTW because petitioner and the children's father are essentially brothers by virtue of their relation to their mutual half brother, Deng Bol, and because people in southern Sudan are considered related when they belong to the same tribe.

Respondent claims that petitioner's claimed dependents do not meet the definitional requirements of a dependent under section 151 and 152 or the prerequisites to be considered a "qualifying child" under section 24.[9]  Specifically, respondent states that petitioner is not related to KGT or JTW under any of the relationships described in section 152, that KGT and JTW did not live with petitioner during the year in issue, and that petitioner has not established that he provided over half of the support for KGT or JTW for the year in issue.

## II.  Burden of Proof

As a general rule, the Commissioner's determination of a taxpayer's liability is presumed correct, and the taxpayer bears the burden of proving that the determination is improper.  Rule 142(a); Welch v. Helvering, 290 U.S. 111, 115 (1933).  Deductions are a matter of legislative grace, and the taxpayer bears the burden of proving that he is entitled to any claimed deductions.

---

[9] Unless otherwise indicated, all section references are to the Internal Revenue Code (Code) in effect for the year in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.

New Colonial Ice Co. v. Helvering, 292 U.S. 435, 440 (1934).

This includes the burden of substantiation. Hradesky v.

Commissioner, 65 T.C. 87, 89-90 (1975), affd. per curiam 540 F.2d

821 (5th Cir. 1976). Although section 7491 may shift the burden

of proof to respondent in specified circumstances, petitioner

here has not established that he meets the requisites under

section 7491(a)(1) and (2) for such a shift.

III. Dependency Exemptions

An exemption is generally allowed for every dependent of a

taxpayer. Sec. 151(a), (c). Since KGT and JTW are not

petitioner's children, they are considered his dependents only if

the definitional requirements of section 151(c) are met and each

of their gross incomes for the taxpayer's taxable year is less

than the exemption amount. Section 152(a) defines a dependent as

an individual for whom the taxpayer contributed over half of the

support during the calendar year and who has one of the following

relationships to the taxpayer:

> (1) A son or daughter of the taxpayer, or a descendent of either,
> (2) A stepson or stepdaughter of the taxpayer,
> (3) A brother, sister, stepbrother, or stepsister of the taxpayer,
> (4) The father or mother of the taxpayer, or an ancestor of either,
> (5) A stepfather or stepmother of the taxpayer,
> (6) A son or daughter of a brother or sister of the taxpayer,
> (7) A brother or sister of the father or mother of the taxpayer,

(8) A son-in-law, daughter-in-law, father-in-law,
mother-in-law, brother-in-law, or sister-in-law of the
taxpayer, or
(9) An individual * * * who, for the taxable year of
the taxpayer, has as his principal place of abode the
home of the taxpayer and is a member of the taxpayer's
household.

Peter Wuol testified that he and petitioner were not related by blood, but Peter Wuol would refer to petitioner as "my brother". Although Peter Wuol believed that he and petitioner were related as brothers because they were from the same "family" and thus, Peter Wuol's children were petitioner's nephews, Peter Wuol admitted that he and petitioner had neither the same father nor the same mother.

Having a relative in common, by marriage, as in the instant case, does not necessarily warrant a finding that petitioner and Peter Wuol are related within the meaning of section 152. See Barbetti v. Commissioner, 9 T.C. 1097, 1098 (1947)(noting that Congress chose only those relationships in section 25(b)(3), Internal Revenue Code of 1939, as amended, as "being sufficiently within the family orbit to warrant a dependency allowance.").[10] Petitioner and Peter Wuol are not considered half brothers

---

[10] The relationships described in sec. 25(b)(3) of the Internal Revenue Code of 1939, as amended and in effect for the taxable years 1944 and 1945 relevant in Barbetti v. Commissioner, 9 T.C. 1097 (1947), are the same as those described in sec. 152(a)(1)-(8).

because they do not have a parent in common.[11]  Petitioner's

father and Peter Wuol's mother's marriage was dissolved, before

petitioner and Peter Wuol were conceived.

Notwithstanding the fact that a taxpayer may not be related

to an individual through one of the relationships specified in

section 152(a)(1)-(8), a taxpayer may be eligible under section

152(a)(9) for a dependency exemption if the claimed dependent has

the same principal place of abode as the taxpayer and is a member

of the taxpayer's household for the taxable year.  Peter Wuol

admitted that his wife and all his children resided with him at

the 3921 E. San Miguel, Apt. 7, Colorado Springs, Colorado,

address for all of 2003.  Petitioner maintained an apartment

separate from the Wuol family but failed to establish that either

KGT or JTW resided with petitioner or were part of his household

at petitioner's 6 North 18th Street apartment.  See Trowbridge v.

Commissioner, 268 F.2d 208, 209 (9th Cir. 1959), affg. 30 T.C.

879 (1958); Douglas v. Commissioner, T.C. Memo. 1994-519, affd.

without published opinion 86 F.3d 1161 (9th Cir. 1996).

Petitioner's contention that he spent considerable amounts

of time in the children's home and helped to pay for the rent on

---

[11] Black's Law Dictionary 206 (8th ed. 2004) defines a
brother as a "male who has one parent or both parents in common
with another person".  Specifically, a half brother is defined as
a "brother who has the same father or the same mother, but not
both", and a stepbrother is defined as the "son of one's
stepparent".

the apartment does not demonstrate that he considered the Wuol family apartment, as opposed to his own apartment, to be his principal place of abode in 2003. After all, petitioner paid rent for his apartment throughout 2003 and did not have specific living quarters in the Wuol family home. Rather, it appears that Peter Wuol merely welcomed petitioner frequently as a guest in his home because they were friends and from the same clan in southern Sudan. During 2003 Peter Wuol's home, not petitioner's home, was the principal place of abode for KGT and JTW who were during that year members of Peter Wuol's household. Thus, petitioner did not bear a section 152(a)(9) relation to KGT or JTW.

Support generally includes food, shelter, clothing, medical and dental care, education, and the like. Sec. 1.152-1(a)(2)(i), Income Tax Regs. To meet the support test of section 152(a), a taxpayer must show: (1) The total amount received by the dependent from all sources; (2) the amounts actually applied for the dependent; (3) the sources which contributed to the total support costs expended for the dependent; and (4) that the taxpayer provided over half the expenditures for the dependent's support. Seraydar v. Commissioner, 50 T.C. 756, 760 (1968).

Petitioner provided only questionable receipts for $1,079 of the amounts he contended he gave to Peter Wuol. As respondent points out, on the basis of Peter Wuol's 2003 tax return and

certified transcripts for Peter Wuol's and Jekow Wuol's 2002 tax refunds, Peter and Jekow Wuol had at least $21,844 to contribute to their family of six in 2003.[12] As petitioner tried to document only that he contributed $1,079 to the entire Wuol family, petitioner failed to meet his burden of proof that he contributed more than half the support for either KGT or JTW for 2003.[13]

Although the Court agrees that petitioner provided some support for KGT and JTW, we cannot infer from the evidence the amount of funds actually used to support KGT and JTW as opposed to other members of the Wuol family. Both petitioner and Peter Wuol testified that the money petitioner gave to Peter Wuol was used for rent on the Wuol family apartment, clothing for the children, and groceries for the family. Thus, most of the funds given by petitioner were expended on the entire family, not specifically on KGT or JTW. Furthermore, petitioner did not substantiate the total support amounts received by KGT or JTW from all sources or which sources. Thus, petitioner failed to prove that he provided over half the support for either KGT or

---

[12] For taxable year 2003, Peter Wuol earned $17,730 in wages. In 2003, Peter Wuol received a Federal tax refund consisting of $23 in withholding and $2,010 in earned income credits. In 2003, Jekow Wuol received a Federal tax refund consisting of $51 in withholding and $2,030 in earned income credits. The sum of these amounts is $21,844.

[13] The Court does not view the three proffered receipts as reliable or sufficient.

JTW.  See <u>Blanco v. Commissioner</u>, 56 T.C. 512, 514-515 (1971);
<u>Stafford v. Commissioner</u>, 46 T.C. 515, 517 (1966).

IV.  <u>Earned Income Credit</u>

Section 32(a) and (c), in relevant part, provide that a
taxpayer may be eligible for the earned income credit if that
taxpayer has a "qualifying child".  A "qualifying child" is a
child who satisfies a relationship test, a residency test, an age
test, and an identification requirement.  Sec. 32(c)(3).
However, a taxpayer may not be eligible for an earned income
credit if the taxpayer's qualifying child is considered the
qualifying child of another taxpayer for the same taxable year.
Sec. 32(c)(1)(C).

The relationship test requires that the qualifying
individual bear a relationship to the taxpayer as described in
section 32(c)(3)(B)(i).  Thus, KGT and JTW must be either the
taxpayer's son, daughter, stepson, stepdaughter, or descendent of
such individual; brother, sister, stepbrother, stepsister, or
descendent of such individual whom the taxpayer cares for as the
taxpayer's own child; or an eligible foster child of the
taxpayer.  KGT and JTW's parents were living during the year in
issue, and the children lived with their parents for all of 2003.
Moreover, the record does not indicate that the children were
petitioner's foster children.  Neither KGT nor JTW meets the
relationship test.

The residency test requires that the qualifying child have the same principal place of abode within the United States as the taxpayer for more than one-half of the taxable year.  Sec. 32(c)(3)(A)(ii), (E).  Petitioner did not have the same principal place of abode as KGT or JTW; thus, neither is a qualifying child.

Nonetheless, subject to phaseout limitations, an individual who does not have any qualifying children may be eligible for an earned income credit under section 32(a) if:  (1) The individual's principal place of abode is in the United States; (2) the individual, or his spouse, has attained the age of 25 but not the age of 65 at the close of the taxable year; and (3) the individual is not a dependent for whom a deduction is allowed under section 151.  Sec. 32(c)(1)(A).

Petitioner's earned income for 2003 was $16,698.  Although petitioner satisfies the eligibility requirements, the phaseout limitation prevents the receipt of any earned income credit.  The earned income credit for an individual without any qualifying children is completely phased out in tax year 2003 when an individual's earned income exceeds $11,230.  Rev. Proc. 2002-70, 2002-2 C.B. 845, 848; see IRS Pub. 596, Earned Income Credit

(2003). Thus, petitioner is not entitled to an earned income credit, and respondent is sustained on this issue.[14]

## V. Child Tax Credit

Section 24 allows a credit for each "qualifying child" of the taxpayer. A "qualifying child" is defined by section 24(c) as an individual who meets the relationship test under section 32(c)(3)(B), has not attained the age of 17 by the close of the taxable year, and with respect to whom the taxpayer is entitled to a dependency exemption deduction under section 151.

During the year in issue, neither child had attained the age of 17. KGT was 12 years old, and JTW was 7 years old at the close of the taxable year. However, as previously discussed, the children do not meet the relationship test, and petitioner is not eligible to claim a dependency exemption deduction for either child for 2003. Thus, petitioner is not allowed a child tax credit or an additional child tax credit.

---

[14] On brief, respondent contended that petitioner's arrangement with Peter Wuol, whereby petitioner would remit the net amount of his withholdings and child tax credits to Peter Wuol, would produce the unintended result of allowing Peter Wuol to obtain earned income credits in an amount in excess of the maximum amount allowed for those individuals filing joint returns. A joint return must be filed by a married individual in order for sec. 32 to apply. Sec. 32(d). Thus, Peter Wuol and Jekow Wuol should have filed joint income tax returns rather than returns filed under head of household filing status for their 2000, 2001, and 2002 taxable years, as well as for Peter Wuol's 2003 taxable year.

VI.  Conclusion

The Court found the testimony of petitioner and Peter Wuol to be sincere and credible.  Although the Court applauds petitioner's efforts to support himself and help support Peter Wuol's entire family, the record does not indicate that he provided over half the support for either child.  Equally as important, petitioner did not establish that he was related to KGT or JTW within the meaning of section 152.  Therefore, petitioner is not entitled to dependency exemptions for KGT or JTW, an earned income credit, a child tax credit, or an additional child tax credit, and he is liable for the deficiency as determined by respondent.

To reflect the foregoing,

Decision will be entered for respondent.